UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| JUANA A. HERNANDEZ,<br><br>  Plaintiff,<br><br>v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>  Defendant. | Civil Action No. 2:16-cv-05210 (SDW)<br><br>**OPINION**<br><br>June 19, 2017 |

**WIGENTON**, District Judge.

Before this Court is Plaintiff Juana Altagracia Hernandez's ("Plaintiff") appeal of the final administrative decision of the Commissioner of Social Security ("Commissioner"), with respect to Administrative Law Judge Dennis O'Leary's ("ALJ O'Leary") denial of Plaintiff's claim for disability insurance benefits ("DIB") under the Social Security Act (the "Act"). This appeal is decided without oral argument pursuant to Federal Rule of Civil Procedure 78. This Court has subject matter jurisdiction pursuant to 42 U.S.C. § 405(g). Venue is proper under 28 U.S.C. § 1391(b). For the reasons set forth below, this Court finds that ALJ O'Leary's factual findings are supported by substantial credible evidence and that his legal determinations are correct. Therefore, the Commissioner's decision will be **AFFIRMED**.

**I.  PROCEDURAL AND FACTUAL HISTORY**

  **A. Procedural History**

On August 23, 2011, Plaintiff completed an application for DIB and alleged disability since September 3, 2009 due to depression, anxiety, panic attacks, carpal tunnel syndrome, allergies, gastritis, and back pain. (R. 309, 340.) The application was denied initially and on reconsideration. (R. 135-139, 141-143.) ALJ O'Leary held a hearing on May 16, 2013 and issued a decision on June 7, 2013 that denied Plaintiff's application for DIB. (R. 70-81, 114-24.) On June 11, 2014, the Appeals Council vacated the decision and remanded the case for another hearing and de novo decision to obtain additional evidence, complete the administrative record, and compare requirements of Plaintiff's previous work with her assigned residual functional capacity ("RFC"). (R. 129-134.) ALJ O'Leary held a hearing on November 20, 2014 in which the Plaintiff and a vocational expert ("VE"), Dr. Pat Green ("Dr. Green"), testified. (R. 48-69.) Plaintiff received a post-hearing physical consultative examination in December 2014, and ALJ O'Leary held a final, supplemental hearing on April 1, 2015, which again included testimony from Dr. Green. (R. 33-47, 580-83.) On June 23, 2015, ALJ O'Leary issued a decision that Plaintiff was not disabled and denied Plaintiff's application for DIB. (R. 11-26.) On June 24, 2016, the Appeals Council denied Plaintiff's request for review, and ALJ O'Leary's decision became the Commissioner's final decision. (R. 1-7.) Plaintiff now requests that this Court reverse the Commissioner's decision and remand the claim for reconsideration. (Pl. Br. at 1.)

### B. Factual History

#### 1. Personal and Employment History

Plaintiff was born on April 22, 1964 and was fifty one years old on the date of ALJ O'Leary's decision. (R. 311.) She completed high school in the Dominican Republic and is unable to communicate in English. (R. 52.) Plaintiff previously worked as an office cleaner, babysitter, food handler, hand packer, and assembly line worker. (R. 26, 364-71.)

### 2. Physical Medical History

The record demonstrates that numerous practitioners examined, consulted, and treated Plaintiff for physical medical issues associated with her disability claim. The following is a summary of the evidence.

Over the course of several appointments between June and August 2010, Plaintiff reported bilateral shoulder pain as well as numbness and tingling in both hands to her orthopedic surgeon, Thomas Helbig, M.D. ("Dr. Helbig"). (R. 473-80.) Dr. Helbig diagnosed Plaintiff with bilateral carpal tunnel syndrome, cervical and lumbar strain, bilateral shoulder strain, and bilateral Achilles tendonitis, and he prescribed physical therapy. (R. 474-76.) Plaintiff subsequently sought surgical treatment on Dr. Helbig's recommendation. (R. 476.) Plaintiff received a right carpal tunnel release surgery on October 4, 2010. (R. 477.) Plaintiff initially responded well to the surgery and conducted activities without restriction or pain. (R. 476.) In addition, Dr. Helbig noted that Plaintiff could increase her activity level. (*Id.*)

Peter Tang, M.D. ("Dr. Tang") treated Plaintiff in June and August 2011. (R. 516-518.) Dr. Tang noted possible carpal tunnel syndrome on the left hand and tendon inflammation, and he prescribed physical therapy. (*Id.*) In September 2011, the neurology report confirmed a clinical diagnosis of carpal tunnel syndrome that was mild on the right wrist and mild to moderate on the left. (R. 517-518.)

Plaintiff went to Columbia Presbyterian in September 2011 for an evaluation that revealed mild-to-moderate carpal tunnel on the left wrist and moderate carpal tunnel on the right. (R. 519.) Dr. Tang recommended other treatment options, like injection and physical therapy, but Plaintiff elected to receive another carpal tunnel release surgery on the left hand on October 7, 2011. (R. 514, 523-26.) Dr. Tang noted that Plaintiff had excellent postoperative finger

motion in addition to intact motor strength and sensation to light touch in the radial, median, and ulnar nerves. (R. 529.)

Plaintiff visited Rhambai C. Patel, M.D. ("Dr. Patel") in November 2011 for a consultative examination. (R. 481-86.) Despite slightly diminished grip in both hands, Plaintiff had no swelling of the interphalangeal joints, no permanent deformity in the hands, and was able to perform both fine and gross movements bilaterally. (R. 482.)

Rashel Potashnik, M.D. ("Dr. Potashnik") treated the Plaintiff in May 2012 and reported that Plaintiff was able to stand freely on her heels and tiptoes and could squat halfway. (R. 502-03.) Plaintiff was able to make a fist, oppose fingers, extend her hands, and separate papers. (*Id.*) Moreover, she tested negative for Phalen's test bilaterally but had residual symptoms of carpal tunnel syndrome. (R. 503.) Dr. Potashnik noted some decreased sensation at the third and fourth fingers bilaterally. (*Id.*) Despite some calf and shin tenderness, Dr. Potashnik noted that the lower extremities showed a normal range of motion. (*Id.*)

In April 2013, Dr. Tang conducted a follow-up appointment with Plaintiff in which Plaintiff demonstrated no tenderness to palpation and had intact motor strength and sensation. (R. 530.) Plaintiff successfully made a composite fist, and Dr. Tang directed her to follow up only as needed. (*Id.*) In December 2014, during Plaintiff's post hearing consultative examination with Dr. Patel, Plaintiff demonstrated a slightly decreased grip strength but showed no neurological deficits or swelling of the interphalangeal joints. (R. 580-81.)

In March 2015, after ordering an EMG, Inna Kleyman, M.D. ("Dr. Kleyman") and Louis Weimer, M.D. ("Dr. Weimer") reported that Plaintiff had normal muscle bulk and strength, intact sensation to light touch in both arms, negative Tinel's and Phalen's tests, and symmetric reflexes. (R. 584-86.) Although the EMG revealed mild median neuropathy at the bilateral

wrists, the physicians described notable improvement from prior tests in September 2011 and attributed variations to residual abnormalities rather than continued compression. (*Id.*)

### 3. Psychological Medical History

The record demonstrates that multiple practitioners conducted psychological evaluations of Plaintiff. The following is a summary of the evidence.

Plaintiff has been receiving antidepressant treatment since 2010. (R. 535.) In December 2011, Ernesto Perdomo, Ph.D. ("Dr. Perdomo") evaluated Plaintiff and diagnosed her with chronic pain and recurrent major depression, characterized as moderate with a global assessment of functioning ("GAF") score of seventy to sixty. (R. 490-93.) Plaintiff demonstrated appropriate dress and grooming, normal gait, a focused thought process, coherent speech, fair short-term memory, good long-term memory, and fair concentration. (R. 492.) Dr. Perdomo noted that Plaintiff could follow instructions of a moderate complexity, such as a four-step instruction. (R. 491.) He also noted that Plaintiff could tend to her own personal care needs and hygiene but needed assistance at times because of her pain. (*Id.*) Plaintiff received a second consultative examination with Dr. Perdomo in May 2012. (R. 497-500.) Plaintiff's GAF score fell to 50, which indicates significant symptoms affecting occupational functioning, including loss of appetite and panic attacks. (*Id.*) Moreover, her psychosocial stress appeared to be severe. (*Id.*) Nevertheless, Plaintiff's concentration, short and long-term memory, and abstraction abilities were fair. (*Id.*)

During an evaluation in July 2012 with Lucie Skidanow, L.C.S.W. ("Ms. Skidanow"), Plaintiff reported poor sleep and had a depressed mood; however, she denied suicidal ideation, homicidal ideation, and assaultive behaviors. (R. 562-579.) In addition, she demonstrated good eye contact, normal speech, fair memory, and a normal thought process. (*Id.*) Ms. Skidanow

noted that Social Security advised Plaintiff to see a psychologist for a possible disability record. (R. 569.)

Plaintiff saw Jesus Pena-Mejia, M.D. ("Dr. Pena-Mejia") for psychological symptoms in August and September 2012. (R. 544-45, 548-49.) Plaintiff reported experiencing mild anxiety and depression because of her inability to work. (R. 544.) In January and February 2014, Dr. Pena-Mejia diagnosed Plaintiff with Dysthymic Disorder, a continuous form of depression, after she reported decreased interest, mild attention problems, and stress. (R. 535-37.) Plaintiff continued to receive psychological treatment every few months. Dr. Pena-Mejia noted good sleep and appetite and a mildly anxious mood in March 2014, fair sleep and appetite in May 2014, and good sleep and appetite and some anxiety in July 2014. (R. 538-43.)

### 4. Function Reports

Plaintiff submitted a self-function report on September 4, 2011. (R. 356-63.) Plaintiff stated that her activities included going grocery shopping twice a month but also reported a lack of energy, trouble sleeping, and difficulty doing tasks without assistance. (*Id.*) Plaintiff's daughter submitted two function reports. (R. 348-55, 381-388.) In September 2011, she stated that her mother would go grocery shopping about twice a month and that she could pay bills, count change, handle a savings account, and use a checkbook or money orders. (R. 348-55.) She also reported that her mother experienced difficulty cooking and memory deficits. (*Id.*) In February 2012, Plaintiff's daughter stated that her mother could "sometimes" do laundry, shop in stores for clothes and food once a week for one to two hours, and count change but needed her assistance in conducting some tasks. (R. 382-84.) She also described her mother's interests as reading, watching television, and sewing. (R. 385.)

### 5. State Agency Assessments

State agency physician Dr. Jyothsna Shastry's ("Dr. Shastry") physical RFC assessment on December 12, 2011 revealed that Plaintiff could lift twenty pounds occasionally and ten pounds frequently. (R. 87-88.) Plaintiff could stand, walk, and sit with normal breaks for a total of six hours in an eight-hour workday. (*Id.*) Plaintiff had an unlimited ability to push, pull, balance, kneel, crouch, and crawl. (R. 87-88.) Plaintiff could occasionally climb ladders, ropes, and scaffolds as well as bend at the waist and could frequently climb ramps and stairs. (*Id.*) Plaintiff's ability to reach in any direction, feel through skin receptors, and exercise fine fingering manipulation was unlimited. (R. 88.) Plaintiff's handling and gross manipulation were limited in both hands but could be performed frequently. (R. 87-88.)

Michael Britton, Ph.D. ("Dr. Britton") completed a mental RFC assessment of Plaintiff on January 4, 2012. (R. 89-90.) Despite Plaintiff's reported short attention span and intolerance for change in routine, the assessment noted that Plaintiff had the mental ability to understand, remember, and follow simple instructions as well as adapt to supervision and occasional change in simple work routines. (*Id.*)

### 6. Hearing Testimony

During the hearing before ALJ O'Leary on November 20, 2014, Plaintiff reported hand pain, hand numbness, and back pain. (R. 55-62.) Her testimony recounted her difficulty ensuring her personal care, cooking without her daughter, reaching and handling small objects, writing or using pencils and utensils, grasping objects, using clothing or garments that require buttons or zippers, carrying a gallon of milk, standing for a long period of time, and walking more than a city block without stopping for a break. (*Id.*)

During the hearing on November 20, 2014, the VE testified that a hypothetical individual with frequent but not continual fine finger manipulation abilities and unlimited abilities in gross

7

manipulation could perform the occupations of hand packer, housekeeper, office cleaner, and assembly line worker. (R. 62-67.) A hypothetical individual who has only occasional fine finger manipulations instead of frequent fine finger manipulations could not perform those occupations. (*Id.*) In that circumstance, however, an individual could perform the unskilled garment sorter occupation. (*Id.*) A hypothetical individual who has no effective fine fingering manipulation would not be able to perform any significant unskilled occupation. (*Id.*)

During the supplemental hearing before ALJ O'Leary on April 1, 2015, Dr. Green testified that the occupations of hand packer, final assembler, and garment sorter include breaks between tasks so that employees are not constantly moving their hands. (R. 44-46.)

## II. <u>LEGAL STANDARD</u>

### A. Standard of Review

In Social Security appeals, this Court has plenary review of the legal issues decided by the Commissioner. *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000). Yet, this Court's review of the ALJ's factual findings is limited to determining whether there is substantial evidence to support those conclusions. *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999).

Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (internal citation and quotations omitted). Thus, substantial evidence is "less than a preponderance of the evidence, but 'more than a mere scintilla.'" *Bailey v. Comm'r of Soc. Sec.*, 354 F. App'x. 613, 616 (3d Cir. 2009) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). Importantly, "[t]his standard is not met if the Commissioner 'ignores, or fails to resolve, a conflict created by countervailing evidence.'" *Bailey*, 354 F. App'x. at 616 (quoting *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir.

1983)). However, if the factual record is adequately developed, "the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence." *Daniels v. Astrue*, No. 4:08-cv-1676, 2009 WL 1011587, at *2 (M.D. Pa. Apr. 15, 2009) (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966) (internal quotation marks omitted)). "The ALJ's decision may not be set aside merely because [a reviewing court] would have reached a different decision." *Cruz v. Comm'r of Soc. Sec.*, 244 F. App'x. 475, 479 (3d Cir. 2007) (citing *Hartranft*, 181 F.3d at 360). This Court is required to give substantial weight and deference to the ALJ's findings. *See Scott v. Astrue*, 297 F. App'x. 126, 128 (3d Cir. 2008). Nonetheless, "where there is conflicting evidence, the ALJ must explain which evidence he accepts and which he rejects, and the reasons for that determination." *Cruz*, 244 F. App'x. at 479 (citing *Hargenrader v. Califano*, 575 F.2d 434, 437 (3d Cir. 1978)).

In considering an appeal from a denial of benefits, remand is appropriate "where relevant, probative and available evidence was not explicitly weighed in arriving at a decision on the plaintiff's claim for disability benefits." *Dobrowolsky v. Califano*, 606 F.2d 403, 407 (3d Cir. 1979) (quoting *Saldana v. Weinberger*, 421 F. Supp. 1127, 1131 (E.D. Pa. 1976) (internal quotation marks omitted). Indeed, a decision to "award benefits should be made only when the administrative record of the case has been fully developed and when substantial evidence on the record as a whole indicates that the claimant is disabled and entitled to benefits." *Podedworny v. Harris*, 745 F.2d 210, 221–22 (3d Cir. 1984) (citations omitted).

### B. The Five-Step Disability Test

A claimant's eligibility for social security benefits is governed by 42 U.S.C. § 1382. An individual will be considered disabled under the Act if the claimant is unable "to engage in any

substantial gainful activity by reason of any medically determinable physical or mental impairment" lasting continuously for at least twelve months. 42 U.S.C. § 423(d)(1)(A). The impairment must be severe enough to render the individual "not only unable to do his previous work but [unable], considering his age, education, and work experience, [to] engage in any kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A). A claimant must show that the "medical signs and findings" related to his or her ailment have been "established by medically acceptable clinical or laboratory diagnostic techniques, which show the existence of a medical impairment that results from anatomical, physiological, or psychological abnormalities which could reasonably be expected to produce the pain or other symptoms alleged . . . . " 42 U.S.C. § 423(d)(5)(A).

To make a disability determination, the ALJ follows a five-step sequential analysis. 20 C.F.R. §§ 404.1520(a), 416.920(a); *see also Cruz*, 244 F. App'x at 480. If the ALJ determines at any step that the claimant is or is not disabled, the ALJ does not proceed to the next step. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

Step one requires the ALJ to determine whether the claimant is engaging in substantial gainful activity ("SGA"). 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). SGA is defined as work that "[i]nvolves doing significant and productive physical or mental duties . . . for pay or profit." 20 C.F.R. §§ 404.1510, 416.910. If the claimant engages in SGA, the claimant is not disabled for purposes of receiving social security benefits regardless of the severity of the claimant's impairments. *See* 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the individual is not engaging in SGA, the ALJ proceeds to step two.

Under step two, the ALJ determines whether the claimant suffers from a severe impairment or combination of impairments that meets the duration requirement found in Sections

404.1509 and 416.909. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An impairment or a combination of impairments is not severe when medical and other evidence establishes only a slight abnormality or combination of abnormalities that would have a minimal effect on an individual's ability to work. 20 C.F.R. §§ 404.1521, 416.921; Social Security Rule ("SSR") 85-28, 96-3p, 96-4p. An impairment or a combination of impairments is severe when it significantly limits the claimant's "physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c), 416.920(c). If a severe impairment or combination of impairments is not found, the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the ALJ finds a severe impairment or combination of impairments, the ALJ then proceeds to step three.

Under step three, the ALJ determines whether the claimant's impairment or combination of impairments is equal to, or exceeds, one of those included in the Listing of Impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If an impairment or combination of impairments meets the statutory criteria of a listed impairment as well as the duration requirement, the claimant is disabled and entitled to benefits. 20 C.F.R. §§ 404.1520(d), 416.920(d). If, however, the claimant's impairment or combination of impairments does not meet the severity of the listed impairment, or if the duration is insufficient, the ALJ proceeds to the next step.

Before undergoing the analysis in step four, the ALJ must determine the claimant's RFC. 20 C.F.R. §§ 404.1520(a), 404.1520(e), 416.920(a), 416.920(e). An individual's RFC is the individual's ability to do physical and mental work activities on a sustained basis despite limitations from his or her impairments. 20 C.F.R. §§ 404.1545, 416.945. The ALJ considers all impairments in this analysis, not just those deemed to be severe. 20 C.F.R. §§ 404.1545(a)(2),

11

416.945(a)(2); SSR 96-8p. After determining a claimant's RFC, step four then requires the ALJ to determine whether the claimant has the RFC to perform the requirements of his or her past relevant work. 20 C.F.R. §§ 404.1520(e)-(f), 416.920(e)-(f). If the claimant is able to perform his or her past relevant work, he or she will not be found disabled under the Act. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1520(f), 416.920(a)(4)(iv), 416.920(f). If the claimant is unable to resume his or her past work, the disability evaluation proceeds to the fifth and final step.

At step five, the ALJ must determine whether the claimant is able to do any other work, considering his or her RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). Unlike in the first four steps of the analysis where the claimant bears the burden of persuasion, at step five the Social Security Administration ("SSA") is "responsible for providing evidence that demonstrates that other work exists in significant numbers in the national economy that [the claimant] can do, given [the claimant's RFC] and vocational factors." 20 C.F.R. §§ 404.1560(c)(2), 416.960(c)(2). If the claimant is unable to do any other SGA, he or she is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

### III. DISCUSSION

On June 23, 2015, ALJ O'Leary applied the five-step disability test and determined that Plaintiff was not disabled between the onset date and the date last insured. (R. 11-26.) ALJ O'Leary's findings are supported by substantial evidence. There is no basis for remand or reversal because Plaintiff's complaints are not supported by the objective medical evidence on the record.

At step one of the five-step test, ALJ O'Leary determined that Plaintiff did not engage in substantial gainful activity during the period from her alleged onset date through the date last insured. (R. 19); *see* 20 CFR 404.1571 *et seq.* At step two, ALJ O'Leary found that Plaintiff's

12

bilateral carpal tunnel syndrome and depression are severe impairments because they have significantly limited Plaintiff's mental and physical abilities to do one or more basic work functions for a continuous period of more than twelve months. (R. 19-20); *see* 20 CFR 404.1520(c). This finding is supported by substantial medical evidence in the record. In addition, ALJ O'Leary determined that Plaintiff's back pain and allergies were not severe, and he supported his findings by referring to Plaintiff's negative MRI test results and an absence of work related physical limitations from Plaintiff's allergy symptoms. (R. 20, 502.)

At step three, ALJ O'Leary found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404. 1520(d), 404.1525, and 404.1526). (R. 20.) Medical listing 1.02 requires an inability to perform fine and gross movements effectively and the involvement of one major peripheral joint in each upper extremity, as defined in 101.00B2c. (*Id.*) ALJ O'Leary properly considered objective medical evidence in making his determination, including evidence that Plaintiff could perform fine and gross movements in both hands, make a fist, oppose fingers, extend her hands, and separate papers. (R. 20, 482, 503.)

ALJ O'Leary found that Plaintiff's mental impairment did not meet Paragraph B criteria of listing 12.02, which requires that the mental impairment result in at least two of the following with extended duration: marked restriction of activities of daily living; marked difficulties in maintaining social functioning; and marked difficulties in maintaining concentration, persistence, or pace, or repeated episodes of decompensation. (R. 20.) A marked limitation consists of more than a moderate limitation but less than an extreme restriction. (*Id.*) ALJ O'Leary properly considered Plaintiff's mild restriction in activities of daily living, mild social functioning

13

difficulties, and moderate concentration difficulties. (R. 20.) ALJ O'Leary properly found that "[s]ome mild to moderate concentration deficits are reasonable due to her depression although she was noted to be cognitively intact upon examination." (*Id.*) Despite Plaintiff's more severe depressive symptoms in May 2012, subsequent examinations in 2012 and 2014 revealed mild to moderate symptoms and less trouble sleeping or eating. (R. 499, 538-44.) Therefore, there is substantial evidence in the record supporting ALJ O'Leary's determination that Plaintiff's impairments failed to meet requirements of the listed impairments.

Before undergoing the analysis in step four, ALJ O'Leary made Plaintiff's RFC determination and properly concluded that Plaintiff can perform a full range of work but is limited to frequent rather than continual fine manipulation bilaterally as well as simple and repetitive jobs. (R. 21.) In support of his finding, ALJ O'Leary referred extensively to medical records from Dr. Helbig, Dr. Tang, Dr. Patel, Dr. Kleyman, Dr. Weimer, Dr. Potashnik, Dr. Perdomo, Ms. Skidanow, and Dr. Pena-Mejia. (R. 22-25.) ALJ O'Leary properly considered all of Plaintiff's symptoms and medical complaints to the extent that they were consistent with objective medical evidence.

ALJ O'Leary afforded the state physical RFC assessment by Dr. Shastry partial weight and concurred only with fine manipulation limitations rather than exertional limitations for carrying and lifting. (R. 25.) There is substantial evidence in the record to support ALJ O'Leary's determination. ALJ O'Leary highlighted that Plaintiff's EMG from March 2015 showed noticeable improvement in her carpal tunnel syndrome from earlier tests, postoperative examinations revealed intact sensation and strength, and Plaintiff demonstrated the ability to make a fist as well as fine and gross movements with both hands. (*Id.*) In addition, Plaintiff and her daughter reported that Plaintiff did laundry occasionally and shopped for food and clothes.

(R. 383-84.) Plaintiff attended her testimony wearing a zippered sweatshirt and carrying a large handbag despite testifying that she could not lift anything or wear clothes with zippers. (R. 22, 55-62.) ALJ O'Leary properly found that Plaintiff's testimony about the intensity, persistence, and limiting effects of her symptoms was inconsistent with objective medical evidence. (R. 26.)

ALJ O'Leary afforded the state agency mental assessment by Dr. Britton considerable weight and found it to be consistent with the record. (R. 25.) He determined that Plaintiff had the RFC to work in simple and repetitive jobs to account for her mild to moderate depression and difficulty sustaining concentration, persistence, and pace. (*Id.*) There is substantial evidence in the record to support ALJ O'Leary's RFC determination, including improvement in Plaintiff's sleep and appetite in late 2012 and 2014 as well as Plaintiff's mild to moderate depressive symptoms. (R. 25, 538-43.)

At step four, after making his RFC determination, ALJ O'Leary properly found that Plaintiff could perform her past relevant work as a hand packer, office cleaner, and assembly line worker at the unskilled level with frequent but not continual fine fingering limitations. (R. 26.) ALJ O'Leary accurately derived his determination from the VE's exact testimony on November 20, 2014. (R. 26, 62-67.) Therefore, there is substantial evidence in the record to support ALJ O'Leary's finding, and neither the testimony from the supplemental hearing in April 2015 nor the post-hearing evidence contradict the VE's testimony from the first hearing. ALJ O'Leary did not move on to step five of the analysis because Plaintiff is not disabled under the Act if she is able to perform her past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1520(f), 416.920(a)(4)(iv), 416.920(f).

On appeal, Plaintiff seeks reversal of the Commissioner's decision and asserts that ALJ O'Leary did not satisfy the Appeals Council's orders to compare requirements of past work with

the assigned RFC, consider work-related social limitations from Plaintiff's mental impairment, evaluate Plaintiff's diminished grip in November 2011 and decreased finger sensation in May 2012, and articulate a specific evidentiary calculus for the RFC determination. (Pl. Br. at 14-15, 24-25.) This Court considers each argument in turn.

In regard to Plaintiff's argument that ALJ O'Leary did not properly compare requirements of past work with the assigned RFC, ALJ O'Leary made it evident that he credited the VE's testimony concerning the physical and mental demands of Plaintiff's previous work. (R. 26, Pl. Br. at 14.) The VE testified that a general office cleaner is unskilled with a light to medium exertional level, a hand packager is unskilled with a light exertional level, and a final assembler is unskilled with a light exertional level. (R. 35-46.) The VE testified during the April 2015 hearing that the occupations of hand packer and final assembler include breaks in between tasks so that employees are not constantly moving their hands. (R. 44-46.) The VE testimony was properly used to compare demands of Plaintiff's previous occupations to her RFC.

With respect to Plaintiff's argument that ALJ O'Leary did not properly consider work-related social limitations from Plaintiff's mental impairment, ALJ O'Leary determined that Plaintiff only had the RFC to perform simple and repetitive jobs to account for her depression and afforded the state agency mental assessment by Dr. Britton substantial weight in his analysis. (R. 21-25, Pl. Br. at 15.) ALJ O'Leary's determination that Plaintiff could perform past relevant work as a hand packer, office cleaner, and assembly line worker accounted for Plaintiff's mental RFC limitation and inability to follow more complex instructions. (R. 21-25.)

With respect to Plaintiff's argument that ALJ O'Leary did not properly consider a November 2011 consultative examination with Dr. Patel that showed diminished grip and a May 2012 consultative examination with Dr. Potashnik that showed decreased finger sensation, ALJ

O'Leary referred extensively to the two examinations and considered the entire record of objective medical evidence to make his determination. (R. 21-26, Pl. Br. at 14.) Although Plaintiff demonstrated a diminished grip in November 2011, ALJ O'Leary also examined evidence from the same examination that reported Plaintiff's ability to perform both fine and gross movements bilaterally. (R. 22-23, 482.) Although Plaintiff demonstrated decreased finger sensation in May 2012, ALJ O'Leary properly weighed evidence of Plaintiff's ability to make a fist, oppose her fingers, extend her hands, and separate papers. (R. 23, 503.) Therefore, ALJ O'Leary properly considered records from Dr. Patel and Dr. Potashnik and weighed the medical evidence to make his determination.

With respect to Plaintiff's argument that ALJ O'Leary did not articulate a specific evidentiary calculus for his RFC determination, ALJ O'Leary examined the entire record of the objective medical evidence and explained which records he afforded greater weight in reaching his RFC decision. (R. 21-26, Pl. Br. at 24-25.) ALJ O'Leary followed a proper two-step process for the RFC determination. (R. 21.) He first determined whether there were medically determinable impairments. (*Id.*) He then evaluated the intensity, persistence, or functionally limiting effects of the symptoms. (*Id.*) In addition, where Plaintiff's statements were not supported by objective medical evidence, ALJ O'Leary properly evaluated the credibility of the statements based on the entire record of evidence. (*Id.*) There is substantial evidence in the record supporting ALJ O'Leary's evidentiary RFC calculus, including: Plaintiff's improved EMG from March 2015; Plaintiff's ability to perform fine and gross movements bilaterally; Plaintiff's ability to do laundry occasionally and shop; and Plaintiff's mild to moderate depressive symptoms. (R. 383-84, 482, 538-43, 584-86.)

IV. **CONCLUSION**

This Court finds that ALJ O'Leary's factual findings were supported by substantial credible evidence in the record. Therefore, the Commissioner's determination is **AFFIRMED**. An appropriate order follows.

s/ *Susan D. Wigenton*
**SUSAN D. WIGENTON**
**UNITED STATES DISTRICT JUDGE**

Orig: Clerk
cc: Parties